**HART AND SON HAULING, INC., Respondent,**

v.

**Terry MacHAFFIE, Appellant.**

**No. 49426.**

Missouri Court of Appeals, Eastern District, Division Four.

March 11, 1986.

Ruppert & Benjamin, Terrance L. Farris, Clayton, for appellant.

Thompson & Mitchell, Gordon L. Ankney, St. Louis, for respondent.

CRANDALL, Presiding Judge.

Defendant, Terry MacHaffie, appeals from a judgment in favor of plaintiff, Hart and Son Hauling, Inc., d/b/a G.J.H. Contracting Company, in a court-tried action for breach of a construction contract for the remodeling of defendant's residence and from a judgment in favor of plaintiff on defendant's counterclaim. We affirm.

Our standard of review in a court-tried case is guided by the oft-cited *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). We accept as true the evidence and reasonable inferences therefrom favorable to the prevailing party and disregard the contrary evidence. *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App.1983). Great deference is accorded the trial court's conclusions. *Fountain v. Schlanker*, 651 S.W.2d 594, 596 (Mo.App.1983).

The evidence at trial established that defendant had received a Housing and Urban Development (HUD) Chapter 312 loan for the renovation of her residence. The loan was to be administered by the City of St. Louis through its Community Development Agency (CDA). On April 6, 1981, defendant and plaintiff, the general contractor, entered into a contract to complete the

project for the sum of $51,708. Plaintiff commenced work that same month.

In June, plaintiff filed a request for payment. On June 24, the architect overseeing the project certified that 47 percent of the work had been completed and executed authorization for the first progress payment. Defendant refused to sign the certificate for payment unless plaintiff agreed to substantially complete all work by August 27, 1981. Plaintiff agreed to that condition. When plaintiff's president went to pick up the check from defendant, however, defendant had a second pre-condition for payment. She required him to sign an agreement which said: (1) that defendant had not contributed to any delay in construction; and (2) that plaintiff would pay $10, as liquidated damages, for everyday after August 27, 1981, for which construction was not completed. Plaintiff's president signed the agreement and received the check for $24,184.

On July 29, 1981, plaintiff stopped work on the project and requested a second progress payment. On August 5, the architect certified that 65 percent of the work had been completed and executed a second authorization of payment in the amount of $9,202. Defendant refused to sign this certificate for payment. On August 13, 1981, after its workers had attempted to return to the job but were unable to gain entry into the house, plaintiff wrote a letter to defendant. Defendant did not respond. Plaintiff then terminated work at defendant's residence.

After a final evaluation on April 1, 1982, the architect authorized a payment of $10,456 for the work plaintiff had performed from the time of the first progress payment until construction was halted. Defendant again refused to sign the certificate for payment. After trial, the court awarded plaintiff that final progress payment and loss of profits of $10,040.68, plus prejudgment interest thereon, for a total of $26,041.03 in damages.

Defendant raises two points on appeal. She alleges trial court error in the denial of her counterclaim for damages and in the award of damages to plaintiff. The threshold issue is whether defendant breached the contract by preventing its completion. If she did, she would not be entitled to recover damages.

▮▮▮▮ Defendant asserts that plaintiff repudiated the contract when its workers left the job on July 29. Anticipatory breach by repudiation occurs when a party to a contract manifests a "positive intention not to perform" either by expressed statements or by conduct. *Carmel v. Dieckmann*, 617 S.W.2d 459, 460 (Mo.App. 1981). In the instant case, plaintiff's president told his men to discontinue working on the job until he got things "squared away" about the progress payments. In a construction contract which provides for progress payments as the work proceeds, the architect's certification of payment is conclusive upon the parties. *See, e.g. Public Water Supply Dist. No. 8 of Jefferson County v. Maryland Casualty Co.*, 478 S.W.2d 293, 296 (Mo.1972). When a progress payment is due and not made, a builder is entitled to suspend his performance and await either assurances of payment or actual payment. Here, plaintiff had encountered difficulty in procuring the first progress payment and, in fact, had to agree to two pre-conditions before receiving payment. At the time plaintiff ceased construction work, a second progress payment had been requested from the architect. After the second payment was authorized, plaintiff's workers attempted to return to the job but were locked out by defendant. At this point, the date for completion had not yet arrived and plaintiff was still ready, willing and able to perform his part of the contract. Halting work on July 29, did not manifest "a positive intention not to perform" the contract and did not constitute an anticipatory breach of contract.

▮▮▮▮ Additionally, when the owner prevents a contractor from completing performance, the contractor's failure to complete his work is excused and he is not regarded as having breached the contract. *Curators of the University of Missouri v.*

*Nebraska Prestressed Concrete Co.,* 526 S.W.2d 903, 911 (Mo.App.1975). The question of whether defendant prevented plaintiff's performance was largely a question of fact for the trial court. There was sufficient evidence for the trial court to find that defendant failed to make timely progress payments and locked plaintiff out of the job. Plaintiff's own further duty under the contract was therefore terminated.

 We turn now to defendant's specific points on appeal. In her first point, defendant asserts that she was entitled to damages for plaintiff's failure to complete, particularly in light of the liquidated damage provision which plaintiff signed. The owner's prevention or hindrance of the contractor's performance of a building contract within a specified time, however, excuses any delays on the part of the contractor and the contractor cannot be held liable for liquidated damages. *Ark Constr. Co. v. City of Florissant,* 558 S.W.2d 418, 423 (Mo.App.1977). Because defendant's own conduct prevented plaintiff from completing the project, the trial court properly refused to award damages to defendant on her counterclaim. Defendant's first point is denied.

In her second point, defendant contends that the amount of damages awarded to plaintiff was incorrect. The trial court awarded plaintiff the final progress payment as well as its loss of profit.

At the final accounting the architect authorized a payment for the work which had been completed but for which plaintiff had not yet been paid. At that point, plaintiff had a right to the payment. Additionally, a party injured by the breach of a contract may recover "whatever net gain he would have made under the contract." *Artcraft Cabinet, Inc. v. Watajo, Inc.,* 540 S.W.2d 918, 924 (Mo.App.1976). The trial court properly found that plaintiff could recover both the final progress payment and its expected profits. Defendant's second point is denied.

The judgment of the trial court is affirmed.

KELLY and PUDLOWSKI, JJ., concur.