WHITE RIVER DEVELOPMENT COMPANY, Plaintiff–Respondent,

v.

MECO SYSTEMS, INC., a Missouri corporation, and Fidelity and Deposit Company of Maryland, Defendants–Third Party Plaintiffs–Appellants,

v.

GREAT SOUTHERN SAVINGS & LOAN ASSOCIATION and Great Southern Financial Corporation, Third–Party Defendants–Respondents.

STATE of Missouri, ex rel. MECO SYSTEMS, INC., Relator,

v.

Honorable J. Edward SWEENEY, Judge of the Associate Circuit Court of Barry County, Missouri, Respondent.

Nos. 17777, 17767.

Missouri Court of Appeals, Southern District, Division One.

Aug. 4, 1992.

Motion for Rehearing or Transfer Denied Aug. 25, 1992.

Application to Transfer Denied Sept. 22, 1992.

John R. Lewis, Lewis & Moon, Springfield, for relator.

Emory Melton, Donald L. Cupps, Ellis, Ellis & Cupps, Cassville, for White River Dev. Co.

PARRISH, Judge.

In No. 17767, Meco Systems, Inc. (Meco) and Fidelity and Deposit Company of Maryland (Fidelity) applied, as permitted by Rule 74.11(c), for an order showing satisfaction of a judgment that was entered in

favor of White River Development Company (White River) and against Meco and Fidelity. The trial court denied the application. Meco and Fidelity filed a Motion for New Trial or, in the Alternative, to Amend Decree. That motion was denied. Meco appeals from the order of the trial court denying the Application for an Order Showing Satisfaction of Judgment.

No. 17777 is an original proceeding in prohibition. White River's attorneys, on behalf of Great Southern Savings & Loan Association and Great Southern Financial Corporation (Great Southern), as assignee of White River, requested garnishment in aid of execution upon certain bank accounts of Meco after Meco had tendered $29,354.83 as payment in full of White River's judgment together with a form "Satisfaction of Judgment" for execution by White River's attorneys and by the attorney for Great Southern as third-party defendant. The amount the garnishment sought was $174,331.04. On August 7, 1991, Meco filed a Motion to Quash Garnishment. Pursuant to interrogatories that had been directed to and answered by the Commerce Bank of Springfield, the trial court, on August 26, 1991, ordered the bank to deliver to the clerk of the court "the sum of 174,331.04 by August 27, 1992." The clerk was directed "not to disburse said funds to the Garnishor until [Meco's] motion to quash [was] ruled on." On August 29, 1991, the trial court held a hearing on the motion to quash and took the motion "under advisement." On September 5, 1991, the trial court filed its order denying the motion to quash but directing the clerk of the court not to make distribution of the proceeds of the garnishment for 20 days in order that Meco and Fidelity could seek prohibition from disbursing those funds. Meco sought a writ of prohibition in this court and a preliminary order in prohibition issued. The respondent trial judge was ordered to take no further action to enforce the order to distribute proceeds of the garnishment or to direct distribution of the proceeds from the garnishment pending further order from this court.

The appeal in case No. 17767 was consolidated with case No. 17777, the proceeding in prohibition. The order denying the Application for an Order Showing Satisfaction of Judgment is reversed and remanded with directions (case No. 17767). The writ of prohibition is made absolute (case No. 17777).

## Facts

Case No. 17767 was before this court previously. In *White River Dev. Co. v. Meco Systems, Inc.*, 806 S.W.2d 735 (Mo. App.1991), this court reversed an award of $34,860, representing "completion damages," to White River and reversed the trial court's denial of a counterclaim that had been brought by Meco. The case was remanded to the trial court with directions to amend the judgment so as "to award Meco $102,333.50 on its counterclaim, with interest from October 30, 1986, at 9% per annum and to award [White River] $154,-604.74 against Meco and Fidelity, with interest from the date of the initial judgment at 9% per annum." *Id.* at 742. Following remand, a judgment was entered in the trial court's records in this case, being case No. CV187–176CC in the Circuit Court of Barry County, as follows:

NOW on this the 13th day of May, 1991, the Court in compliance with the mandate of the Missouri Court of Appeals, Southern District, enters the following judgment.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Plaintiff White River Development Company is granted judgment against the Defendant Meco Systems, Inc. and the Defendant Fidelity and Deposit Company of Maryland and each of them for $154,-604.74, together with interest from January 9, 1990 at the rate of 9 percent per annum.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant Meco Systems, Inc. is granted judgment against the Plaintiff White River Development Company for $102,-333.50 together with interest from October 30, 1986 at the rate of 9 percent per annum.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant Meco Systems, Inc.'s claim for mechanic's lien is denied.

The costs of the Trial Court are assessed against the Defendants Meco Systems, Inc. and Fidelity and Deposit Company of Maryland.

The costs of the Appeal are assessed equally among the parties.

Execution may issue.

The amount of $29,254.83 that Meco tendered in payment of the judgment debt was calculated as follows:

| | | |
|---|---|---|
| Amount awarded to White River | | $154,604.74 |
| Interest from Jan. 9, 1990 (the date of the original judgment), to May 17, 1991, at the rate of 9% per annum | | 18,857.54 |
| | | $173,462.28 |
| Less: Amount awarded to Meco on its counterclaim | ($102,333.50) | |
| Interest at rate of 9% per annum | (42,873.95) | (144,207.45) |
| Amount owed by Meco to White River | | $ 29,254.83 |

---

Meco's check in the amount of $29,254.83 was transmitted by its attorney's letter dated May 17, 1991, four days after the May 13 "judgment." The letter purports, by typewritten notation on its face, to have been "hand-delivered." The form "Satisfaction of Judgment" was included with the letter. No issue is made about the date of the letter or the amount of the interest calculated for purposes of computing the $29,254.83. By separate letters to Meco, an attorney for White River and the attorney for Great Southern refused to accept the amount that Meco had tendered in full payment of its judgment debt. Meco's check was returned. On June 19, 1991, Meco and Fidelity filed their Application for an Order Showing Satisfaction of Judgment. The trial court denied that application by its "Decree" dated August 7, 1991, but which is shown as being filed August 12, 1991. Meco and Fidelity filed a "Motion for New Trial or, in the Alternative, to Amend Decree" August 26, 1991. That motion was denied September 5, 1991. Meco filed a notice of appeal September 12, 1991. No appeal was taken by Fidelity.

The motion to quash the garnishment that is the subject of case No. 17777 was directed to a garnishment in aid of execution of the May 13 judgment, the judgment that was purportedly entered in accordance with the directions from this court following the initial remand of the same case now before this court in No. 17767. The basis for the trial court's denial of the motion to quash the garnishment is the same basis that the trial court relied upon in denying Meco's application for an order showing satisfaction of the May 13 judgment.

Issues Presented on Appeal
in Case No. 17767

Meco contends that the trial court erred in denying its Application for an Order Showing Satisfaction of Judgment. According to Meco, the trial court erred in applying and declaring the law in four respects. Meco contends that the trial court erred (1) in finding that White River's assignment of judgment to Great Southern "was executed and binding" upon Meco on March 8, 1990; (2) in finding that White River's assignment of judgment to Great Southern was binding on Meco before Meco was awarded judgment on its counterclaim; (3) in declaring that Meco was not entitled to a setoff; and (4) in declaring that Great Southern, as assignee, did not take the assigned judgment "subject to all defenses while in the hands of the assignor [White River]."

White River's brief, in addition to addressing the points presented by Meco, raises a procedural issue that requires determination. White River contends that, notwithstanding the merit or lack of merit of any of Meco's points, Meco's appeal should be dismissed because it was not timely filed. White River asserts that the appeal is directed to the judgment that was entered by the trial court on May 13, 1991; that since Meco's application for satisfaction of judgment was not filed until June 19, 1991, more than 30 days after entry of judgment, the judgment had become final and an appeal would not lie.

### Timeliness of the Appeal

As authority for its claim that Meco's appeal was untimely, White River cites Rule 81.04 without further explanation. Apparently, White River's reference to Rule 81.04 is directed to subparagraph (a). It provides that in order for appeals to be effective, "the notice of appeal shall be filed not later than ten days after the judgment or order appealed from becomes final." White River argues that since the judgment was entered on May 13, it became final 30 days after its entry; therefore, in order for Meco to have appealed therefrom, a notice of appeal was required to have been filed not later than 40 days following May 13, 1991—not later than June 22.[1]

White River further argues that Meco's contention that it is appealing from the trial court's denial of its Application for an Order Showing Satisfaction of Judgment is of no consequence because the application itself was untimely. White River contends that the application was an after-trial motion and, as such, it was required to have been filed within 30 days next following the entry of the May 13 judgment, i.e., before the judgment became final, in order to have been effective. Alternatively, with respect to consideration of the Application for an Order for Satisfaction of Judgment, White River argues that even if the trial court

could consider it, since it was denied by the "decree" that was filed August 12, 1991, Meco had only 10 days thereafter, until August 22, 1991, in which to file a notice of appeal.

■ "The right of appeal is purely statutory." *Chura v. Bank of Bourbon,* 674 S.W.2d 675, 677 (Mo.App.1984); Rule 81.01. Section 512.020, RSMo 1986, permits parties aggrieved by judgments of trials in civil actions to appeal so long as the appeal "is not prohibited by the constitution, nor clearly limited in special statutory proceedings." Such parties may appeal from various orders and judgments "or from any special order after final judgment in the cause." *Id.*

■ If Meco's application for satisfaction of judgment is, as White River contends, an attack on the May 13 judgment so as to be in the nature of an after-trial motion, White River's assessment that the appeal was not timely filed and that the trial court was without jurisdiction would be correct. The May 13 judgment became final, for purposes of determining when an appeal could be taken, 30 days after its entry since no timely motion for new trial was filed. Rule 81.05(a). A notice of appeal would have had to have been filed "not later than ten days after the judgment ... bec[a]me[ ] final" in order for it to have been appealed. Rule 81.04(a).

■ This court concludes, however, that Meco's appeal does not constitute an attempt to appeal the May 13 judgment. The Application for an Order Showing Satisfaction of Judgment was not an after-trial motion directed to the May 13 judgment. It was an application filed pursuant to Rule 74.11(c). As such it is a special order entered in this case after final judgment was entered following the first appeal. A "special order after final judgment in the cause" is an order in a special proceeding that attacks or aids the enforcement of the judgment. *Carrow v. Carrow,* 294 S.W.2d

---

1. Since no motion for a new trial was filed with respect to the May 13 judgment, it became final upon expiration of 30 days after its entry. Rule 81.05(a). In order to have appealed from the judgment, a notice of appeal would have been required to have been filed not later than 10 days thereafter. Rule 81.04(a).

595, 597 (Mo.App.1956). In *Carrow*, the court determined that an order overruling a motion to quash an execution on a judgment was appealable as a "special order after final judgment in the cause." *Id.* In assessing the nature of the order, the court observed:

> The principal cause—the divorce action—had been disposed of. The order was made in a proceeding independent of the proceedings in the principal cause. The overruling of the motion was a final and complete disposition of the subject matter of the motion.

*Id.*

Here, the principal action was the cause that resulted in the May 13 judgment. The reduction of that cause of action to judgment disposed of it. The proceeding whereby Meco sought entry of an order showing satisfaction of the judgment was in a separate proceeding from the trial and from the appeal of the principal cause of action. As in *Carrow*, it was "independent of the proceedings in the principal cause." It sought relief as permitted by Rule 74.-11(c). The trial court's denial of Meco's application for an order showing satisfaction of the May 13 judgment was a final and complete disposition of its subject matter.

This court holds that the order denominated "Decree" by the trial court which denied Meco's Application for an Order Showing Satisfaction of Judgment is an appealable order. *See F.W.H. v. R.J.H.*, 709 S.W.2d 513 (Mo.App.1986), which was an appeal from a trial court's order showing satisfaction of a judgment. *F.W.H.* was based upon an application to a trial court by a judgment debtor.[2]

■ White River's assertion that even though the order denying Meco's Application for an Order Showing Satisfaction of Judgment is appealable, the appeal therefrom was untimely also fails. White River cites *Hoey v. Royston*, 723 S.W.2d 929 (Mo.App.1987), and *McFadden v. Hartman*, 677 S.W.2d 948 (Mo.App.1984), for the proposi-

tion that Meco was required to have filed its notice of appeal within 10 days after the Application for an Order Showing Satisfaction of Judgment was denied. However, neither case stands for that proposition.

*McFadden* states, with respect to when a notice of appeal must be filed, "If the judgment complained of was final, this court has no jurisdiction because Hartman's notice of appeal was not filed within 10 days after that judgment became final." 677 S.W.2d at 950. *McFadden* does not hold that when an appealable "special order" is denied, it must be appealed within 10 days following the denial. *McFadden* does not involve those circumstances.

*Hoey* involves an appeal from an order modifying child support. The order modifying the child support decree was entered January 9, 1986. On January 13, 1986, the father filed a motion to set the order aside. That motion was heard and denied on January 17. The father then, on January 21, 1986, filed a motion for new trial. On February 13, the trial court dismissed the motion for new trial on the basis that the first motion the father had filed, the motion to set aside the modification order, was in essence a motion for new trial. On February 21, the father filed a notice of appeal. The court of appeals dismissed the appeal saying:

> If a motion for new trial is timely filed, the judgment becomes final at the expiration of 90 days after the filing of the motion or, if the motion is passed on at an earlier date, then at the date of disposition of the motion. Rule 81.05. We have examined the January 13 motion and conclude, as did the trial court, that it should be considered a *motion for new trial*, although it was designated "motion to set aside." *See Ward v. Davis*, 701 S.W.2d 192, 194 (Mo.App.1985); *Hamm v. Hamm*, 437 S.W.2d 449, 452–53 (Mo.App.1969). The judgment, for appeal purposes, thus became final on January 17, 1986, when the January 13 motion was denied.

2. The trial court's order in *F.W.H.* was entered pursuant to Rule 74.56 (repealed). Rule 74.-11(c) permits the same relief with respect to a trial court entering an order showing satisfaction of a judgment as was available under Rule 74.56 (repealed).

A notice of appeal must be filed not later than 10 days after the judgment or order appealed from becomes final. Rule 81.04. The filing of the notice of appeal on February 21, 1986, therefore, was not timely, and we are without jurisdiction to entertain this appeal. Rule 81.07 permits a late notice of appeal under certain circumstances, but father did not attempt to comply with this rule.

723 S.W.2d at 930.

*Hoey* treated an appealable "special order," an order modifying a child support decree, the same as a judgment in any traditional civil case. In *Hoey* the appealable "special order" did not become final, for purposes of ascertaining the time within which an appeal could be taken, until the motion to set aside the order—in effect, a motion for new trial—was heard. The "special order" was entered January 9. The motion to set aside the order (a motion for new trial) was filed January 13. That motion was denied on January 17. Thus, 10 days later, the time in which a notice of appeal could be filed expired. Rule 81.04.

The same procedure that was explained in *Hoey* is applicable here. Meco filed its Application for an Order Showing Satisfaction of Judgment on June 19, 1991. The "special order" denying that motion—the order that was denominated "Decree"—was entered August 12, 1991. Meco filed a Motion for New Trial or, in the Alternative, to Amend Decree on August 26, 1991, within 15 days after entry of the appealable "special order." Rule 78.04. That motion for new trial was denied by order entered September 5, 1991. On that date, the appealable "special order" became final "[f]or the purpose of ascertaining the time within which an appeal [could] be taken." Rule 81.05(a). Meco filed its notice of appeal on September 12, 1991, "not later than ten days after the judgment or order appealed from bec[a]me[ ] final."

Meco's appeal was timely filed. It is properly before this court for review on the merits.

3. This court judicially notices the mandate that is included in its records as part of its file in

**Case No. 17767—Merits of the Appeal**

■ The points that Meco presents on appeal are directed to the judgment that was entered in the records of the trial court on May 13, 1991, following remand by this court. This court, in remanding the cause following its first appeal, gave explicit instructions regarding the amount of damages to be awarded to White River on the claim set forth by its petition and the amount of damages to be awarded to Meco on the claim set forth by its counterclaim. The trial court was directed as follows:

> The cause is remanded to the trial court with directions to amend the judgment to award Meco $102,333.50 on its counterclaim, with interest from October 30, 1986, at 9% per annum and to award plaintiff [White River] $154,604.74 against Meco and Fidelity, with interest from the date of the initial judgment at 9% per annum.

806 S.W.2d at 742.

The trial court was "to amend the judgment"—one judgment, not multiple judgments. The judgment was to be amended "to award Meco" damages on its counterclaim and "to award plaintiff [White River]" damages on its petition in an amount less than the amount that was originally awarded by the trial court. The mandate of this court, likewise, directed the trial court to amend the judgment (singular) that it had previously entered. The mandate[3] was as follows:

#### MANDATE

#### APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

On this day, the Court, being sufficiently advised of and concerning the premises, does consider and adjudge that the portions of *the judgment* rendered herein by the Circuit Court of Barry County denying Meco monetary recovery on it counterclaim and awarding plaintiff [White River] completion damages of

case No. 16835, the initial appeal in this case.

$34,860 be and hereby are reversed. The remainder of *the judgment* is affirmed. The cause is remanded to the Circuit Court of Barry County for further proceedings in conformity with the opinion of this Court herein delivered. Costs of the appeal are to be divided equally among the parties. (Emphasis added.) The trial court had no authority to do other than was directed by the opinion and mandate of this court. *Morrison v. Caspersen,* 339 S.W.2d 790, 792 (Mo.1960). If it has done otherwise, any proceedings that it undertook in entering judgment in this case that were inconsistent with the opinion and mandate in the initial appeal are null and void. *Id.*

■ One basis that Meco has asserted as constituting trial court error is the trial court's determination "that Meco was not entitled to a setoff." Meco contends that this amounted to error by the trial court in applying and declaring the law. Meco has persisted throughout this appeal in couching its argument in this regard, as has White River in attempting to rebut Meco's argument, in terms of whether one "judgment" should be offset against another "judgment." Both parties persist in referring to the "judgment" on the petition and the "judgment" on the counterclaim even though separate trials were not conducted with respect to the issues presented by the petition and the issues presented by the counterclaim.

"Where . . . separate trials were not ordered or had, there should be only one final judgment which should dispose of all parties and all issues." *MFA Central Cooperative v. Harrill,* 405 S.W.2d 525, 530 (Mo. App.1966) (citation omitted). As explained in *Rehm v. Fishman,* 395 S.W.2d 251, 255 (Mo.App.1965):

> [I]n a suit at law for a money judgment where there is but one count in the petition, and but one in a counterclaim filed there can be but one judgment. . . .

Thus while there should be separate findings upon plaintiff's cause of action and upon defendant's counterclaim, nevertheless one final judgment should be entered, which in the usual practice, re-

cites the respective findings, and concludes with a judgment for the party in whose favor the greater finding was made, and for a sum which represents the excess over that found for his adversary.

White River argues, however, that the number of parties and the nature of the claims in this case precluded entry of a single judgment. It contends that "there were six different claims for damages" in its cause of action; and that there were three different parties involved in the claims that were tried—apparently referring to White River, Meco and Fidelity—"plus Great Southern, which was defending the Mechanic's Lien portion of the case." White River does not explain how that assessment, if correct, would have prevented the entry of a single judgment in the case.

In the first appeal of this case, this court characterized White River's efforts to recover from Meco and Fidelity as follows:

> Plaintiff sought damages against defendant Meco Systems, Inc. (Meco) and defendant Fidelity and Deposit Company of Maryland (Fidelity). Plaintiff's claim was based on breach of a construction contract which it had with Meco to construct condominium residential buildings consisting of two four-plexes and two eight-plexes on the same tract. Fidelity was the surety on a performance bond and a "Labor and Material Payment Bond" provided by Meco on the project.

806 S.W.2d at 736. Further, at page 739, this court pointed out that the trial court had made findings with respect to damages to which it found White River entitled and included those findings in a footnote, n. 2, to the opinion. The fact that, as in most cases involving construction contracts, there were many facets involved in assessing damages does not preclude entry of a single judgment in the case.

■ With respect to the argument that a single judgment was precluded because the case involved three different parties and Great Southern for purposes of defending "the Mechanic's Lien portion of the case," it is appropriate to examine the role each played in the proceedings and the final

result reached. These roles and the relative identities of the participants in the litigation are set forth in this court's opinion in the first appeal at 806 S.W.2d 735.

White River was developer of a condominium residential project. It contracted for the construction of "condominium residential buildings consisting of two four-plexes and two eight-plexes on the same tract." *Id.* Meco was the construction company with which White River contracted. "Fidelity was the surety on a performance bond and a 'Labor and Material Payment Bond' provided by Meco on the project." *Id.*

Great Southern Savings & Loan Association was the cestui que trust of the deed of trust on the property White River was developing—it had loaned White River funds for construction of the project. Great Southern Financial Corporation was trustee on the deed of trust. They were third-party defendants by reason of Meco's claim that it was entitled to a mechanic's lien to secure the amounts it claimed were due from White River.

Meco had counterclaimed for additional sums that it contended White River owed. It sought recovery for sums it alleged White River owed under the terms of its contract with White River and for work done based upon "change orders" that had amended the contract.

In asserting that a single judgment is precluded, White River cites *Mills v. First Nat'l Bank of Mexico*, 697 S.W.2d 264 (Mo. App.1985), and *Riddle v. Dean Machinery Co.*, 564 S.W.2d 238 (Mo.App.1978). White River relies upon *Mills* and *Riddle* for the proposition that "where these [sic] are multiple theories and parties the general rule of allowing an offset is not applicable."

The *Mills* case that White River has cited was a second appeal. It was an action to set aside a foreclosure and to collect for lost profits. That action was consolidated with an action for rent and possession brought by the purchaser at the foreclosure sale. In the first appeal of the *Mills* case, *Mills v. First Nat'l Bank of Mexico*, 661 S.W.2d 808 (Mo.App.1983), the case was remanded with directions for the

trial court to enter an order allowing Mills time in which to redeem the property that was foreclosed upon. Upon the entry of such an order by the trial court and upon redemption of the property by Mills, the sale and trustee's deed would have been null and void and judgment would have been entered accordingly. The trial court was directed to reinstate its original judgment if Mills failed to comply with the prescribed conditions.

The court pointed out in *Mills*, in 697 S.W.2d at 266, that the case involved two counts "associated with one claim and not a claim and crossclaim." It acknowledged "[t]he law is clear that judgments concerning claims and cross-claims are generally offset and there is only one final judgment for the balance owed the party with the larger judgment." *Id.* The court concluded that Mills would have been entitled to damages only if he had redeemed the property; that he had not done so; therefore, "there was no judgment or damages to offset." *Id.*

*Mills* is of no help to White River. In this case there are damages to be offset so as to result in one final judgment for the balance owed the party with the larger award.

*Riddle*, the other case upon which White River relies, is more complex. In it an intervenor had established equitable liens against interests of Riddle in certain items of construction equipment. Riddle sought to recover that equipment, by replevin, from Dean. The trial court assessed the value of the property that was sought to be replevied, entered judgment for possession for Riddle or, in the alternative, for the value of the property. Dean was awarded money damages on a counterclaim. He complained that the court entered separate money judgments rather than "an offset of damages assessed against each and entry of a single judgment for Dean and against Riddle for the excess." 564 S.W.2d at 259.

The court, in *Riddle*, acknowledged, "In cases on claims and counterclaims, generally there would be separate findings on plaintiff's claim and on defendant's counterclaim embodied in a single judgment

which, in usual practice, recites the findings and concludes with a judgment for the party in whose favor the greater finding was made, and for the sum which represents the excess of his finding over that of his adversary." *Id.* citing *City of St. Louis v. Clark*, 35 S.W.2d 986 (Mo.App. 1931); and *Rehm v. Fishman, supra.* However, the court in *Riddle* found that the equitable liens of the intervenor in that case precluded the entry of one award of damages offsetting the respective awards to Riddle and Dean. The intervenor's liens were against Riddle's interests in the property that was the subject of its claim against Dean. The court held that Riddle's money damages that were attributable to his loss of possession of the equipment and were subject to the intervenor's liens could not be offset against other damages that were not affected by the intervenor's liens.

In this case, the problem that existed in *Riddle* of lack of common interests in each damage award does not exist. White River's damages are recoverable from Meco. They are the result of work done (or not done) pursuant to a construction contract between the parties. Meco's damages on its counterclaim are recoverable from White River. They are the result of work done pursuant to the same construction contract as that contract was amended due to "change orders."

White River's argument that there were "six different claims for damages" in the original proceeding is likewise not persuasive. Although the pleadings in the lawsuit are not included in the legal file in this appeal, a review of the record in the original appeal to this court reveals that the cause of action that White River tried and appealed was an action for breach of contract. What White River characterizes as "claims" for damages is no more than methods or theories that it relied upon in undertaking to prove damages for breach of contract.[4] The fact that the determination of White River's damages amounted to a complex undertaking by the trial court

(and by this court in the initial appeal of this case) does not preclude the damages awarded Meco on its counterclaim from being offset against White River's damages in its cause of action against Meco.

White River is not aided by its assertion that "three different parties plus Great Southern, which was defending the Mechanic's Lien portion of the case," were involved in the litigation. The involvement of more than two litigants did not affect the trial court's obligation to offset damages for purposes of entering one judgment for the party who was awarded the larger damages. Great Southern was a third-party defendant in the original action in order to defend Meco's efforts to perfect mechanic liens. No mechanic's lien was awarded. Great Southern was thereby dismissed from the action.

Although Fidelity is a party, and co-defendant with Meco, its presence has no bearing on this issue. "Fidelity was the surety on a performance bond and a 'Labor and Material Payment Bond' provided by Meco on the project." 806 S.W.2d at 736. "In regard to contract damages, the liability of a surety is coextensive with that of its principal." *Howard Const. Co. v. Teddy Woods Const. Co.*, 817 S.W.2d 556, 561 (Mo.App.1991). As surety, Fidelity's liability is secondary to Meco with respect to the amounts Meco owed the beneficiary.

> The liability of the surety is secondary in the sense that it arises only upon nonperformance of the underlying promise by the principal. If the principal performs the underlying promise, the surety is not liable.

*State v. Morganstein*, 703 S.W.2d 894, 898 (Mo. banc 1986). Fidelity stands in the same position as Meco insofar as White River is concerned.

Meco's claim that the trial court erred in applying and declaring the law in determining that Meco "was not entitled to setoff" is well taken. It is determinative of this appeal. For that reason, only that point

---

4. What White River's brief describes as "six different claims for damages" are "[d]amages for failure to complete; defective workmanship, both repairable and non-repairable; charges for

items never delivered; charges for warranty work which [White River] had no obligation to pay and Meco's claim for work it did."

will be addressed with respect to No. 17767.

The judgment that is set out in the trial court's records in this case and which is dated May 13, 1991, is irregular in that it did not recite findings and it failed to enter a single judgment. As such, it does not reflect the judgment that was required to be rendered. *See Rehm v. Fishman, supra.* To the extent that the May 13 judgment stated other than was required by the opinion and mandate of this court in this case's initial appeal, it is a nullity and should be recast on the records of the trial court. *Morrison v. Caspersen, supra.* The clerical entry in the records of the trial court should have reflected a finding in favor of White River on the issues in its petition against Meco and Fidelity and assessment of damage thereon in the amount of $154,604.74 with interest from January 9, 1990, at the rate of 9% per annum. It should further have reflected a finding in favor of Meco on the issues in its counterclaim and assessment of damages thereon in the amount of $102,333.50 with interest from October 30, 1986, at the rate of 9% per annum. It should have reflected that judgment was rendered in favor of White River and against Meco for the difference between the amounts of damages allowed. The amount that Meco tendered in payment of the judgment was consistent with those requirements. The trial court erred in denying Meco's Application for an Order Showing Satisfaction of Judgment.

The order of the trial court denying Meco's Application for an Order Showing Satisfaction of Judgment must be reversed and this case again remanded with directions.

### Case No. 17777

Meco sought prohibition after $174,331.04 of its funds had been garnisheed for purposes of paying a judgment debt purportedly owed to White River. Those funds were paid into the registry of the Circuit Court of Barry County. Meco had unsuccessfully sought to have the garnishment quashed. The trial court deferred distribution of the garnisheed funds to permit Meco to seek prohibition. This court issued its preliminary order in prohibition.

As may be discerned from the part of this opinion that addressed the appeal in case No. 17767, this case has had an unusual procedural history. It has been twice appealed. The underlying, but critical, issue in case No. 17767 was whether the trial court's May 13, 1991, judgment—the judgment that was entered upon its records upon remand following the initial appeal—was entered in conformity with the directions given by this court in its opinion that is reported at 806 S.W.2d 735 and the mandate resulting therefrom. This court, in its review of No. 17767, the case that is consolidated with this proceeding in prohibition, has determined that the May 13 judgment, as it appears on the trial court's records, does not conform with its prior opinion and mandate. Consistent therewith, the preliminary order in prohibition in this case shall be made absolute.

▄ This court observes that the respondent's brief states that respondent "does not dispute the contention that Prohibition is the proper remedy to review the decision of a Trial Court denying a Motion to Quash a garnishment." This court assumes that position is based upon the authority cited by Meco, viz., *Orf v. Computer Institute, Inc.,* 480 S.W.2d 73 (Mo.App.1972), in which the Eastern District of this court dismissed the appeal of a circuit court order that denied a petition to quash garnishment. The Eastern District concluded that the order was not appealable and, by dictum at l.c. 74, suggested that prohibition may be a proper remedy in such instances. But, see *Carrow v. Carrow, supra,* at 597, in which this state's Supreme Court held that the denial of a motion to quash garnishment was an appealable order.

This court need not, and does not, address the issue of whether the denial of the motion to quash garnishment in this case was an appealable order. As was noted in *State ex rel. Douglas Toyota v. Keeter,* 804 S.W.2d 750, 752 (Mo. banc 1991), in limited situations "[a] court may exercise its discretion to issue and determine an original remedial writ when questions of

significance fail otherwise to obtain judicial review." Given the fact that the same issue that was decided in case No. 17767 would be determinative of the question of whether the trial court's denial of Meco's motion to quash garnishment was erroneous, this court concludes that the circumstances of this case justify use of the extraordinary remedy; that absent this court prohibiting the distribution of the funds now on deposit in case No. CV187–176CC in the Circuit Court of Barry County with the circuit clerk, the results reached in the appeal in No. 17767, consolidated herewith, would possibly be thwarted and Meco could be subjected to irreparable harm by reason of the trial court's enforcement of an erroneous judgment.

### Conclusion

Case No. 17767 is reversed and remanded with directions to the trial court to cause the clerk of that court to correct the records in case No. CV187–176CC in the Circuit Court of Barry County, Missouri, so that those records reflect a finding in favor of White River on the issues in its petition on its claim for breach of contract against Meco and Fidelity and assessment of damages thereon in the amount of $154,604.74 with interest from January 9, 1990, at the rate of 9% per annum; and further reflect a finding in favor of Meco on the issues in its counterclaim and assessment of damages thereon in the amount of $102,333.50 with interest from October 30, 1986, at the rate of 9% per annum. The trial court shall thereupon cause the judgment in that case to be corrected so that it is shown to have been entered in favor of White River and against Meco and Fidelity for the difference between the amounts of damages allowed. Thereafter, upon Meco paying the sum of $29,254.83 into the registry of the trial court, or otherwise depositing with the court the receipt of White River and of Great Southern for that amount, or by directing that the aforesaid amount be withheld from its funds that were heretofore paid into the registry of the trial court as a result of the garnishment served upon Commerce Bank of Springfield as aforesaid, the trial court shall enter its order showing satisfaction of judgment and shall release to Meco, or to its order, such funds, or the balance thereof not used as aforesaid, that were heretofore paid into the registry of the trial court as a result of the aforesaid garnishment that was served upon Commerce Bank of Springfield.

In case No. 17777, the preliminary order in prohibition is made absolute. Writ of prohibition shall issue ordering the respondent judge to take no action to enforce the order of September 5, 1991, in case No. CV187–176CC in the Circuit Court of Barry County, Missouri, whereby the motion to quash garnishment that was filed by Meco was denied, and the respondent judge is prohibited from ordering distribution of the garnishment proceeds being held by the Circuit Clerk of Barry County in case No. CV187–176CC, except as may be consistent with the opinion of this court with respect to case No. 17767 that is consolidated herewith.

PREWITT, P.J., and CROW, J., concur.