**Marjorie Helen CHANEY, et al., Respondents,**

v.

**Virginia L. GRAY, et al., Appellants.**

**No. WD 49172.**

Missouri Court of Appeals, Western District.

Feb. 28, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application to Transfer Denied June 20, 1995.

Alvin D. Shapiro, Kansas City, for appellants.

William M. Modrcin, Jr., Kansas City, for respondents.

Before HANNA, P.J., and
BRECKENRIDGE and SMART, JJ.

HANNA, Presiding Judge.

This action involves a dispute over the ownership of certain assets originating from the condemnation proceeds of a family-owned farm in Jackson County, Missouri. The farm property was originally owned by Jess L. Gray, a Kansas resident, who died testate on November 10, 1966. Jess Gray was survived by his wife, Verda V. Gray, and their five adult children. The plaintiffs are the two daughters of Jess Gray, Marjorie Helen Chaney and Virginia Lee Soetaert, and the surviving spouses and children of two of Jess Gray's deceased sons, Vernon Harold Gray and Everett Woodrow Gray. The defendants are Virginia Gray, who is the surviving spouse of Leslie Paul Gray, also a deceased son of the testator, her children, and the administrator of Leslie Paul's estate in Kansas.

On January 30, 1967, the last will and testament of Jess Gray was admitted to probate in Jackson County for the purpose of determining title to the Missouri farm property. The will disposed of Jess Gray's property as follows:

> Second: I give, bequeath and devise to my wife, Verda Virginia Gray, all my property, both real and personal, to use, possess and dispose of, including the power to mortgage or sell any of said property, for so long as she remains unmarried, or until the time of her death in the event she remains single, it being my intention that she have the full power of disposal of all of my said real and personal property, except upon the contingency of remarriage;

Third: In the event that my said wife should remarry it is my will and I so direct that whatever property shall remain undisposed of at the time of said remarriage shall be at said date of marriage divided as follows: An undivided half interest to my said wife and the remaining one half interest to my five children: Vernon Harold Gray, Everett Woodrow Gray, Virginia Lee Gray Soetaert, Lesley Paul Gray, and Marjorie Helen Chaney;

Fourth: It is further my will and I so direct that upon the death of my said wife any and all of my property both real and personal which shall remain undisposed of by her under said power of disposal set forth in paragraph Second hereof shall be and become the property of my said five children hereinbefore named in paragraph five in equal portions share and share alike; it being my intention herein to create in my said wife the full power to dispose of all my said property but that in the event that she shall not exercise said power said property shall pass upon her death to my said five children;

Fifth: I specifically bequeath to my son, Lesley Paul Gray all my farm implements, said farm implements being excepted from the provisions of paragraphs Second, Third and Fourth[.]

Leslie Paul Gray was named the executor of his father's estate. On December 19, 1967, the probate court entered its order entitled, "Final Settlement Approved; Finding and Decree of Succession; Order of Discharge," finding that the successors to Jess Gray's interest in the Missouri farm property under his will were his surviving spouse, Verda, and their five children, and assigning a "fee simple" interest. The estate was subsequently closed and no appeal was taken from the probate order.

In 1972, the farm property was condemned by Jackson County pursuant to a condemnation action instituted against Verda and the five children. As a result of this action, proceeds in the amount of $209,500 were awarded to Verda and the children as compensation for the taking of the farm property. This award was subsequently increased to $341,000, plus interest, and was paid to Verda and the children. Shortly thereafter, the children executed and filed a consent form allowing all of the proceeds to be paid solely to their mother. The record indicates that the proceeds were initially deposited by Verda in various bank accounts in her name alone. In 1980, Verda used approximately $100,000 of the proceeds to purchase an undivided one-half interest in certain real estate in Memphis, Tennessee. In 1982, Verda moved into a nursing home where she resided until her death.

Verda Gray died testate on January 1, 1989. She had not remarried at the time of her death. In February 1989, her will was admitted to probate in Jackson County and her son, Leslie Paul, served as the personal representative of the estate. Her will devised, *inter alia*, her one-half interest in the Tennessee real estate to her three surviving children, Leslie Paul, Virginia Soetaert and Marjorie Chaney, to be shared equally. In July 1989, the children of Everett and Vernon Gray (who are also plaintiffs in the present action) filed a petition to contest Verda's will, alleging undue influence by Leslie Paul because he had received a substantial portion of Verda's estate under her will. The trial court dismissed the action and the plaintiffs appealed but subsequently dismissed their appeal voluntarily.

The plaintiffs subsequently learned of the existence of bank accounts totalling nearly $300,000 as of Verda's death. At the time of Verda's death, Leslie Paul Gray's name had been added to several of his mother's accounts as a joint tenant with right of survivorship and those accounts passed by operation of law to Leslie Paul upon his mother's death. When Leslie Paul died testate in July 1991, these accounts either passed directly to his surviving spouse, Virginia Gray, as a joint tenant, or were closed and transferred to other accounts owned by Virginia Gray.

In December 1991, the plaintiffs brought this suit against Virginia Gray, (both individually and as the personal representative of Leslie Paul's estate) claiming they were entitled to a share of the accounts and other property as remaindermen under Jess Gray's will. In their petition, the plaintiffs alleged, *inter alia*, that Jess Gray's will gave his wife,

Verda, a life estate with a remainder to the five Gray children which vested on the date of their father's death. The plaintiffs claimed they were entitled to receive their interest in the life estate assets, including both real and personal property, which were traceable to the condemnation proceeds, upon the death of Verda. An accounting firm was hired to trace the condemnation proceeds from the time they were paid to Verda in the mid–1970s through 1993. The plaintiffs sought the imposition of a constructive trust on these assets.

A trial was held in August 1993. On February 16, 1994, the trial court entered a judgment in favor of the plaintiffs. Notwithstanding the 1967 probate order stating that the interest granted to Verda and the five children was "fee simple," the trial court interpreted Jess Gray's will and found that title to the farm property had passed to Verda as a life tenant with a remainder interest to the five children. The court based this finding on "the fact that the [probate] order lists the devisees of such real estate as Verda Gray *and* all five of the Gray children pursuant to paragraphs Second, Third and Fourth of decedent's will." The court concluded that as remaindermen, or their successors in interest, under Jess Gray's will, the plaintiffs were entitled to recover their 4/5 share of the total life estate assets. A constructive trust was imposed on all of the bank accounts and the real estate which were traceable to the proceeds, and a judgment was entered for the plaintiffs in the amount of $450,338.06. The plaintiffs subsequently filed a motion for assessment of costs for the accounting. Defendants filed a notice of appeal on March 16, 1994. On March 29, 1994, the trial court entered an order assessing one-half of the accountant's fees as costs against defendants. No appeal was taken from this subsequent order.

Defendants raise several points on appeal, the first of which is dispositive. However, we will also address defendants' challenge to the assessment of costs.

■ Our standard of review is well established. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In their first point, the defendants claim that the trial court erred in construing the will of Jess Gray twenty-six years after the probate court's order had become final. Defendants argue that the final distribution order entered by the probate court in 1967, which assigned a "fee simple" interest in the farm property to Verda and the five children, was a conclusive determination of the parties' rights, title and interest in the property pursuant to § 473.617, RSMo 1986 of the Probate Code.

Section 473.617 provides, in pertinent part:
1. After the expiration of the time limit for the filing of claims, the executor ... shall file his final settlement and at the same time petition the court to decree the final distribution of the estate.
2. In its decree of final distribution, *the court shall designate the persons to whom distribution is to be made, and the proportions or parts of the estate, or the amounts, to which to each is entitled under the will* and the provisions of this law. . . .
4. *The decree of final distribution is a conclusive determination of the persons who are the successors in interest to the estate of the decedent and of the extent and character of their interests therein, subject only to the right of appeal and the right to reopen the decree. It operates as the final adjudication of the transfer of the right, title and interest of the decedent to the distributees therein designated;* but no transfer before or after the decedent's death by an heir or devisee shall affect the decree, nor shall the decree affect any rights so acquired by grantees from the heirs or devisees.

[Emphasis added].

The issue presented here is whether the "fee simple" designation in the 1967 probate order was a conclusive determination of the plaintiffs' interest in Jess Gray's property. We would not disagree with plaintiffs' contention that the will contained life estate language. If the probate court order of dis-

tribution was contrary to the plain provisions of the will, consideration must be given to *McNeal v. Bonnel,* 412 S.W.2d 167 (Mo.1967). In *McNeal,* it was held that a decree of distribution by the probate court which was contrary to the clear meaning of the will was void. *Id.* at 169. Neither of the parties in this case have alleged or argued that the order of the probate court should have been declared void as being contrary to the will.

An order of the probate court is "as much entitled to respect and to all presumptions of correctness as orders of any other court." *Baker v. Baker,* 813 S.W.2d 116, 119 (Mo. App.1991) (*quoting Coons v. Stokes,* 514 S.W.2d 33, 35 (Mo.App.1974)). "[I]f the probate court's construction of a will may be upheld on any possible theory, its decree will control." 5A Borron & Hanna, Probate Law & Practice, Mo. Practice § 1449, n. 4 (1990) (*quoting* Missouri Estate Administration, Ch. 13 (Mo.Bar C.L.E.1986)).

The issue of finality of a decree of distribution was addressed by the eastern district in *Baker.* The court held that a probate order approving a final settlement and distribution of an estate was conclusive on the interpretation and meaning of an ambiguous provision in a will. In that case, both parties claimed they were entitled to an interest in the testator's residence under the will. *Id.* at 118. The appellants argued that the decree of distribution, which stated that the parties were "joint tenants with the right of survivorship," should be declared void because it was contrary to a provision of the will which appellants claimed devised a tenancy in common interest. *Id.* at 119. In finding that the order of distribution was supported by one interpretation of the will, the court held that the probate order became conclusive when the judgment became final. *Id.*

Similarly, in *Carpenter v. White,* 664 S.W.2d 276, 277 (Mo.App.1984), the southern district concluded that a decree of distribution was a conclusive determination of the successors to interest in a decedent's intestate estate. In that case, the names of the appellants, who were first cousins of the decedent and also heirs at law, had been omitted from the final decree of distribution which listed fourteen other first cousins as the sole heirs of the decedent. Notwithstanding that the appellants were the decedent's heirs at law, the trial court held that the decree of distribution was a conclusive bar to their claim. *Id.*

In the present case, the plaintiffs asserted in their petition that the will of Jess Gray was admitted to probate in 1967, for the express purpose of determining title to the Missouri farm property. The probate order found that the will granted a fee simple interest to Verda and the five children under paragraphs Second, Third and Fourth of Jess Gray's will. The record also reflects that the Gray family had an attorney who assisted them with the probate of their father's estate in 1967. If there had been any questions or objections to the probate court's determination as to the plaintiffs' interest in the property, the family had an absolute right to request a review of the order at that time. However, no appeal was taken from the probate order. At the time of this action, the time period for an appeal from the probate order or to reopen the decree had already expired.

In the trial court's findings of fact and conclusions of law, it stated that:

> While the interest granted was "fee simple," because such interest was granted to Verda Gray and all five of the children, the only logical conclusion which can be reached is that this reflected the combined interests of such persons in the subject property, as a life estate coupled with a remainder interest is a fee simple interest. Had the Probate Court interpreted decedent's Will to pass a fee simple interest in the property to Verda V. Gray only, then the Probate Court would not have listed all of the Gray children as devisees with Verda V. Gray. By including both Verda V. Gray and all of the Gray children as devisees of the same property, and by finding that the interest granted to all of such persons was a fee simple interest, the Probate Court necessarily found that decedent's Will created present interests in both his surviving spouse and his surviving children, and that such interests were a life estate in Verda V. Gray and vested remainders in the children.

The plaintiffs argue that the trial court correctly concluded that the "fee simple" interest referred to in the 1967 probate order reflected the "life estate" and "remainder" interest granted to Verda and the children under the will. They assert that, in view of the clear provisions of the will, it would be impossible to construe the probate order to give the property to Verda and the children as "tenants in common" because the children did not own a concurrent estate with their mother. While we agree that the language of the will would support a finding that the testator intended for his wife to receive a present interest in his property with a future interest for the children, we are unable to conclude that the "fee simple" interest referred to in the probate order can be construed to mean a "life estate" and a "remainder." There is no mention of a life estate or remaindermen interest in the probate order. Nor does the order name Verda as the sole devisee, but rather lists her and all of the children as devisees of the property.

While it is evident that the devise to Verda was a present interest, the interest granted to the children was necessarily a future interest because the children would not receive the property unless their mother remarried or, if she remained single, unless there was any undisposed of property remaining at her death. Although the probate order clearly indicates that a "fee simple" interest was passed to Verda and the children, it does not specify whether the fee simple was "absolute" or "defeasible." A fee simple absolute is an estate which is not subject to a special limitation, a condition subsequent or an executory limitation. Restatement of Property § 15 (1936). If both Verda and the children had a fee simple "absolute," there would be no future interest in the property since they would all own an undivided present interest in the property as tenants in common. An estate in fee simple "defeasible," however, may be subject to a special limitation, a condition subsequent or an executory limitation. *Id.* § 16. A defeasible fee is also accompanied by a future interest. *Id.* These defeasible fee estates may be either

automatically terminated upon the occurrence of a specified event or "divested" at the option of the person having the power of termination. *Id.* If there is a gift over in favor of a third person, the future interest that follows is an "executory interest." *Id.* § 47.

In this case, paragraphs Third and Fourth clearly reflect an intent to create a future interest in the children. In view of this language, it would be illogical to conclude that the testator intended to grant a fee simple absolute in favor of Verda and the children as tenants in common. Verda's estate is subject to a special limitation as reflected in paragraphs Second and Third of the will which provides that if Verda remarries, she will have to divide the property with her children. This limitation is consistent with a type of defeasible estate referred to as a "determinable" fee simple estate with an executory interest [1] because under paragraph Third of the will, the estate would terminate upon the happening of a specified event, i.e., Verda's remarriage, with a gift over to the children. *See Buschmeyer v. Eikermann,* 378 S.W.2d 468, 472–473 (Mo.1964); *Sullivan v. Garesche,* 229 Mo. 496, 129 S.W. 949, 952–953 (1910).

In view of the special limitation and the future interest that is reflected in the will, we may understand that the probate court's interpretation of the will, as reflected in the 1967 decree, gave Verda a determinable fee simple estate rather than a fee simple absolute. The children's interests were primarily contingent on their mother's remarriage. Accordingly, it would follow that the inclusion of the children's names on the final decree would reflect their respective executory interests in fee simple. As such, it was an interpretation not clearly contrary to the plain provision of the will.

We find that the 1967 probate order was a conclusive determination of the plaintiffs' rights, title and interest in Jess Gray's property. As such, the trial court incorrectly construed the fee simple interest designated

---

1.  See, e.g., *Id.* § 44 cmt. f, illus. 9 & § 47. "A, owning Blackacre in fee simple absolute, effectively devises Blackacre 'to my wife B and her heirs until she remarries,' B has an estate in fee simple determinable."

in the probate order to reflect a life estate to Verda with a remainder to the children. When the children agreed to transfer their share of the condemnation proceeds to their mother in the mid–1970's, they effectively relinquished any interest they may have had in those funds. As such, they cannot now complain because their mother elected to transfer her proceeds by inter vivos gift or testamentary disposition.

Defendants also claim that the trial court erred in assessing costs against them for one-half of the fees of the accounting expert.

Section 512.020, RSMo 1986, authorizes an appeal from any special order entered after a final judgment. An after judgment order on a motion for costs is an appealable special order within the meaning of § 512.020. *Mitchell v. Johnston,* 241 S.W.2d 902, 903 (Mo.1951). A special order entered after the final judgment is not reviewable unless a separate appeal is taken therefrom. *Earhart v. A.O. Thompson Lumber Co.,* 140 S.W.2d 750, 754 (Mo.App.1940).

In this case, the trial court entered its judgment on February 16, 1994. The defendants filed their notice of appeal from that judgment on March 16, 1994. The trial court entered a separate order on the plaintiffs' motion for the assessment of costs on March 29, 1994, several days after the defendants had filed their appeal. In that order, the court assessed one-half of the cost of the accountant's fees against the defendants based on a prior agreement between the parties. The defendants did not file a separate appeal from the subsequent order. Therefore, this matter was not preserved for our review. *Id.*

The judgment of the trial court is reversed. The appeal from the order assessing costs is dismissed.

All concur.