

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| ALL STAR AWARDS & AD SPECIALTIES, INC., | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | WD85491 |
| HALO BRANDED SOLUTIONS, ET AL., | ) ) ) | Filed: July 18, 2023 |
| Respondent. | ) ) | |

**Appeal from the Circuit Court of Jackson County
The Honorable John M. Torrence, Judge**

**Before Division Two: Alok Ahuja, P.J., and
Anthony Rex Gabbert and Thomas N. Chapman, JJ.**

In 2019, the Circuit Court of Jackson County entered a $3.1 million judgment in favor of Appellant All Star Awards & Ad Specialities, Inc., reflecting approximately $525,000 in actual damages, and $2.6 million in punitive damages. The punitive damages awarded in the judgment were less than half of the $5.5 million awarded by a jury. In an earlier appeal, All Star challenged the reduction of the punitive damages award; the Missouri Supreme Court rejected All Star's arguments and affirmed the circuit court's judgment. Following the Supreme Court's affirmance, the circuit court held that All Star had forfeited its right to recover post-judgment interest when it unsuccessfully appealed the

adequacy of the punitive damages awarded in the original judgment. All Star again appeals. We affirm.

## Factual Background

Both All Star and the Respondent, HALO Branded Solutions, Inc., are in the business of selling branded promotional products to their clients. All Star is a small, family-operated business located in Kansas City, while HALO has approximately 2,000 employees and locations across the United States.

In 2018, HALO hired Doug Ford, who had worked for All Star since 1994, as a salesperson. All Star contended that, before leaving All Star, Ford surreptitiously began working to promote HALO's interests, in coordination with HALO management and staff. Ford's covert activities included transferring customer orders from All Star to HALO, and sharing confidential information concerning All Star's business and customers with HALO employees.

After it discovered Ford's actions, All Star sued HALO and Ford in the Circuit Court of Jackson County. All Star alleged claims for tortious interference with business expectancies, for breach of Ford's duty of loyalty, and for HALO's participation in a civil conspiracy with Ford to breach his duty of loyalty. A jury awarded All Star actual damages of $25,541.88 for breach of Ford's duty of loyalty (and for HALO's participation in that breach as a conspirator). The jury also awarded All Star actual damages of $500,000 for tortious interference. Finally, the jury awarded All Star $5.5 million in punitive damages against HALO, as well as $12,000 in punitive damages against Ford.

On October 29, 2019, the circuit court entered an Amended Final Judgment and Order. Consistent with the jury's verdict, the Amended Final

2

Judgment awarded All Star actual damages of $525,541.88, and $12,000 in punitive damages against Ford.  The Amended Final Judgment reduced the punitive damages award against HALO to $2,627,709.40 (five times the jury's award of actual damages), by operation of the limitation on punitive damages found in § 510.265.1, RSMo.  The Amended Final Judgment awarded All Star its costs jointly and severally against Ford and HALO.  The Amended Final Judgment also specified that, "in accordance with RSMo. § 408.040, interest shall accrue on this judgment at the rate of 7.50% per annum until satisfaction is made."

HALO filed a notice of appeal to this Court on November 8, 2019, and All Star filed a cross-appeal on November 18, 2019.  (Ford did not participate in the prior appeal, or in the present appeal.)  The appeals were consolidated.  In its appeal, HALO argued several errors relating to evidentiary rulings, jury instructions, and the submissibility of All Star's claims for actual and punitive damages.  In its cross-appeal, All Star argued that the circuit court should not have reduced the jury's award of punitive damages against HALO.  All Star argued that the punitive damages award was not excessive under constitutional due process standards or common-law remittitur principles, and that the punitive damages cap in § 510.265.1, RSMo unconstitutionally infringed on All Star's right to a jury trial under the Missouri Constitution.

This Court rejected HALO's appellate arguments; we agreed with All Star, however, that the circuit court had erred in reducing the punitive damages award against HALO under § 510.265.1, RSMo, because application of that statute denied All Star its constitutional right to have the jury determine its damages.  *All*

3

*Star Awards & Ad Specialties Inc. v. HALO Branded Sols., Inc.*, No. WD83327, 2021 WL 96073 (Mo. App. W.D. Jan. 12, 2021).  We remanded the case to the circuit court "to determine whether the jury's $5.5-million punitive-damages award must be reduced as a matter of due process or remittitur."  2021 WL 96073, at *11.

The Missouri Supreme Court granted HALO's transfer application.  The Court issued its opinion on April 5, 2022.  *All Star Awards & Ad Specialties, Inc. v. HALO Branded Sols., Inc.*, 642 S.W.3d 281 (Mo. 2022) ("*All Star I*").  The Court's opinion refused to consider HALO's appellate arguments due to defects in the Points Relied On in HALO's substitute brief.  *Id.* at 294-95.  On All Star's cross-appeal, the Court concluded that reducing the punitive damages award against HALO under § 510.265.1, RSMo did not deprive All Star of its right to a jury trial.  The Court explained that the right to a jury trial contained in Article I, § 22(a) of the Missouri Constitution only preserved to litigants "the right to a jury trial . . . they would have enjoyed . . . at common law when the Missouri Constitution was first adopted in 1820."  *Id.* at 286 (citation omitted).  According to the Court, the jury-trial right did not attach to All Star's claims for tortious interference or breach of a duty of loyalty, because "All Star's common law causes of action against HALO and Ford either did not exist prior to 1820 or are not analogous to claims existing before 1820 for which juries could have awarded punitive damages."  *Id.* at 294 (citation omitted).

The Supreme Court's opinion in *All Star I* concluded:  "[b]ecause the circuit court did not err in applying the punitive damages cap in section 510.265 to reduce All Star's award of punitive damages and the reduced award is well

4

within the constitutional parameters of due process, the circuit court's judgment is affirmed." 642 S.W.3d at 298. The Court's mandate, issue on April 21, 2022, specified that the circuit court's judgment should "be in all things affirmed, and stand in full force and effect in conformity with the opinion of this Court herein delivered."

During the pendency of the appeal which culminated in *All Star I*, HALO had posted a supersedeas bond with the circuit court in the amount of $6.8 million. The bond amount represented the total amount of the jury's verdict (prior to the reduction of the punitive damages award), as well as approximately eighteen months of post-judgment interest. Following the Missouri Supreme Court's decision in *All Star I*, HALO filed a motion with the circuit court on April 24, 2022, to substitute a cash bond of $3,153,251.28 for the supersedeas bond. In its motion, HALO argued that the amount of required security should reflect only the amount of All Star's actual damages, together with the reduced punitive damage award which the Supreme Court had affirmed. HALO also argued that All Star was not entitled to *any* post-judgment interest, because under Missouri law, "[a] judgment creditor is not entitled to postjudgment interest if: (1) the judgment creditor appeals the adequacy of the judgment; and, (2) the judgment creditor loses the appeal."

HALO's Motion to Substitute alleged that, although HALO's counsel had contacted All Star's counsel "to make arrangements for HALO to satisfy the Amended Judgment," All Star's counsel had "refused to accept $3,153,251.28 in satisfaction of the Amended Judgment." HALO's Motion prayed that the circuit court

5

enter an order: (1) releasing the surety bond in the amount of $6,800,000.00 by Liberty Mutual Insurance Company; (2) order Plaintiff to return physical custody of the bond instrument to HALO within five (5) days of any order, both of which is [*sic*] conditioned upon HALO posting a $3,153,251.28 cash bond paid into a Court account to be held while the issue of post-judgment interest is resolved.

On April 28, 2022, the circuit court granted HALO's Motion to Substitute in part. The court permitted HALO to withdraw the supersedeas bond and substitute a cash deposit in the registry of the court; however, the court ordered that the cash deposit should be $3,764,875.75 – an amount which *included* post-judgment interest. HALO subsequently deposited that amount with the court.

Following further briefing, the circuit court entered a ruling which it denominated a "Final Judgment After Remand from the Supreme Court of Missouri" on May 27, 2022. The Final Judgment After Remand agreed with HALO that, because All Star had unsuccessfully cross-appealed the sufficiency of the punitive damages awarded in the court's original October 2019 judgment, All Star was not entitled to post-judgment interest under Missouri law. The circuit court's Final Judgment After Remand concluded:

> IT IS THEREFORE ORDERED that Plaintiff's request for post-judgment interest is DENIED. Plaintiff shall have judgment against Halo Branded Solutions, Inc. in the original amount of $3,153,251.20 without post-judgment interest. The Court Administrator is hereby ordered to pay out to counsel for Plaintiff the total sum of $3,153,251.20 ($525,541.88 in actual damages and $2,627,709.40 in punitive damages).[1] Plaintiff shall file a Satisfaction of Judgment upon the transfer of the funds as ordered.

---

[1] The circuit court's Final Judgment After Remand misstated the total amount of All Star's damages against HALO by $.08: the actual total of the compensatory and (reduced) punitive damages awarded against HALO is $3,153,251.28,

6

IT IS FURTHER ORDERED that the Court Administrator pay out the remaining balance of $611,624.55 to Defendant Halo Branded Solutions, Inc.

All Star moved to amend the Final Judgment After Remand on June 8, 2022. The circuit court did not rule on the motion, and All Star filed a notice of appeal on June 29, 2022.

## Discussion

### I.

We begin by addressing All Star's third Point. In its third Point, All Star argues that it was entitled to post-judgment interest under the plain language of the October 2019 Amended Final Judgment and § 408.040.3.[2] All Star contends that no exception to its right to recover post-judgment interest is applicable here.

Section 408.040.3 provides in relevant part:

> [I]n tort actions, interest shall be allowed on all money due upon any judgment or order of any court from the date judgment is entered by the trial court until full satisfaction. All such judgments and orders for money shall bear a per annum interest rate equal to the intended Federal Funds Rate, as established by the Federal Reserve Board, plus five percent, until full satisfaction is made. The judgment shall state the applicable interest rate, which shall not vary once entered.

While § 408.040.3 mandates the payment of post-judgment interest in tort actions "until full satisfaction" of the judgment, Missouri caselaw has long recognized an exception to the availability of post-judgment interest. Under well-established caselaw, a judgment creditor is not entitled to interest on the judgment where the creditor appeals the adequacy of the judgment, and that

___

not $3,153,251.20. Because All Star does not make an issue of it, we disregard this trivial discrepancy.

[2] Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2022 Cumulative Supplement.

appeal is ultimately unsuccessful. This exception was first recognized in *State ex rel. Southern Real Estate & Financial Co. v. City of St. Louis*, 115 S.W.2d 513 (Mo. App. 1938). In *Southern Real Estate*, the City of St. Louis brought a condemnation suit against Southern Real Estate. The circuit court entered judgment for the City, finding that Southern Real Estate would receive benefits from the condemnation for which it owed the City financial compensation. *Id.* at 514. Both parties appealed to the Supreme Court. In that appeal, "the city was contending that the benefits assessed against the property by the judgment of the circuit court were grossly inadequate, while [Southern Real Estate] for its part was insisting that the assessments . . . were . . . excessive and unreasonable." *Id.* As in this case, the Supreme Court rejected the arguments of both parties, and affirmed the circuit court's judgment. *Id.*; *see City of St. Louis v. Senter Comm'n Co.*, 73 S.W.2d 389 (Mo. 1934).

Following the Supreme Court's affirmance, a dispute arose between the parties concerning whether the City was entitled to post-judgment interest on the judgment. The statute in effect at the time, § 2841, RSMo 1929, provided that "interest shall be allowed on all money due upon any judgment or order of any court, from the day of rendering the same until satisfaction be made . . . ." A provision of the St. Louis City Charter contained a similar provision. *See S. Real Est.*, 115 S.W.2d at 515. The Court of Appeals recognized that neither the statute nor the Charter explicitly created an exception to the post-judgment interest mandate where the judgment creditor unsuccessfully appealed. The Court nevertheless held that such an exception was required, in order to give effect to the legislature's intent:

8

The underlying theory upon which interest is allowed on money judgments is that from the moment of the entry of the judgment the amount thereof is due from the judgment debtor, with the necessary consequence that the latter is thereafter in default until the judgment is satisfied, and is therefore required to pay interest on his debt as compensation for his further retention and use of the judgment creditor's money. But such exaction of interest obviously implies that the judgment creditor is standing upon the amount of the judgment as the amount which is then due him from his judgment debtor, and that any delay in satisfaction of the judgment, as by an appeal therefrom, is solely occasioned by the act of the judgment debtor himself . . . .

. . . But where it is the judgment creditor himself who is dissatisfied, and he appeals upon the ground of what he conceives to be the inadequacy of the judgment which was rendered in his favor, then if the judgment is affirmed he is held not to be entitled to interest on the judgment pending the disposition of the appeal, since it was by his own act that the proceeding was delayed and prolonged until such time as judicial sanction of the correctness of the judgment finally culminated in its affirmance by the appellate court.

. . . .

. . . [E]ven though the statute and charter do not expressly relieve the judgment debtor from liability for interest pending the judgment creditor's appeal, we think that no other construction of them would be consistent with the intent implied in their enactment. . . . [H]ow can it be said that the amount of the judgment is due from the judgment debtor as a fixed and settled obligation when the judgment creditor himself appeals to a court of appellate jurisdiction to have that very judgment set aside upon the ground of error in its rendition? . . . When it is the judgment creditor himself who creates the situation whereby the judgment may not be satisfied and the judgment debtor discharged, he is in no position to insist that there is any money due upon the judgment, and until money is due upon the judgment, there is no authority for exacting interest upon the theory of a default in satisfaction of it.

115 S.W.2d at 515-16 (citations omitted).

Notably, in *Southern Real Estate* the City made one of the same arguments that All Star makes here: that the rule suspending post-judgment interest should not apply because *both parties* appealed the judgment, and because the City only cross-appealed *after* Southern Real Estate's appeal had already been filed. The record in *Southern Real Estate* did not reflect who filed the first appeal. *Id.* at 516. The Court held, however, that the order in which the appeals were filed, and the fact that the defendant Southern Real Estate had also appealed, were irrelevant:

> [W]hether the city first appealed or not is after all not conclusive of the point now at issue. The conceded fact is that the city did appeal, and having done so it cannot escape its own responsibility for the delay which resulted in the prolongation of the proceeding. So long as the city did appeal, it would have been impossible for [Southern Real Estate] to have discharged all the liability of its lands for special assessments, and until such time as payment would have extinguished the obligation and have freed the lands from liens, there was no payment due the city from [Southern Real Estate].

*Id.*

Citing *Southern Real Estate*, the Missouri Supreme Court has stated that "[t]he law is well settled that where a judgment creditor appeals on the grounds of inadequacy from a recovery in his favor, and the judgment is affirmed, he is not entitled to interest pending the appeal." *Komosa v. Monsanto Chem. Co.*, 317 S.W.2d 396, 398 (Mo. 1958).[3] In *Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652

---

[3] *Komosa* applied the *Southern Real Estate* rule to deny interest to a worker's compensation claimant under § 287.190.2, RSMo. *Komosa* was overruled, with respect to worker's compensation awards, in *Martin v. Mid-America Farm Lines, Inc.*, 769 S.W.2d 105, 112 n.13 (Mo. 1989). *Martin* held that, because of the different wording of §§ 287.190 and 408.040, "authorities about payment of interest on civil judgments are not necessarily applicable" to worker's compensation awards. *Id.* at 112.

(Mo. 1962), the Supreme Court applied the *Southern Real Estate* rule in a case like this one, in which both the judgment debtor and the judgment creditor had appealed. The Court held that post-judgment interest did not accrue during the pendency of the cross-appeals – even though the judgment creditor was *partially successful* in its appeal:

> Where a judgment creditor appeals on the grounds of inadequacy from a recovery in his favor, and the judgment is affirmed, he is not entitled to interest pending the appeal. We deem the application of this rule to be appropriate in the circumstances of this case in spite of the fact that the plaintiffs were successful on one facet of their appeal, and the further fact that the Mayfair Company and other defendants also appealed.

*Id.* at 665 (citation omitted).

Like *Jesser* and *Southern Real Estate*, other cases have denied post-judgment interest during the pendency of a plaintiff's appeal, despite the fact that the defendant had also appealed the judgment. Thus, in *Investors Title Co. v. Chicago Title Insurance Co.*, 18 S.W.3d 70 (Mo. App. E.D. 2000), the Eastern District explained that, by arguing that the *Southern Real Estate* rule was inapplicable in the context of cross-appeals, "Plaintiff wrongly focuses on Defendants' acts, rather than on its own acts in delaying potential payment of the judgment. Regardless of Defendants' own appeal, Defendants could not have satisfied the judgment against them so long as Plaintiff's appeal was pending." *Id.* at 74. For other cases applying *Southern Real Estate* in the context of cross-appeals, see, *e.g.*, *Gomez v. Construc. Design, Inc.*, 157 S.W.3d 652, 655 (Mo. App. W.D. 2004); *Fru-Con/Fluor Daniel Jt. Venture v. Corrigan Bros., Inc.*, 154 S.W.3d 330, 339 (Mo. App. E.D. 2004); *Land Clearance for Redev. Auth. v. Kansas Univ. Endowment Ass'n*, 831 S.W.2d 649, 650 (Mo. App. W.D. 1992).

Other cases recognize the continued vitality of the *Southern Real Estate* rule, although finding it inapplicable where the plaintiff *prevails* on its appeal. *Lindquist v. Mid-Am. Orthopaedic Surgery, Inc.*, 269 S.W3d 508, 510 (Mo. App. E.D. 2008) (citing and following *CADCO, Inc. v. Fleetwood Enters., Inc.*, 250 S.W.3d 376, 379 (Mo. App. E.D. 2008)).

Under *Southern Real Estate*, All Star's right to post-judgment interest was suspended during the pendency of its appeal. All Star was unsuccessful on appeal – the Missouri Supreme Court rejected the sole Point All Star raised. The fact that All Star may have filed its notice of appeal after HALO is irrelevant to the application of the *Southern Real Estate* rule.

All Star argues that the *Southern Real Estate* rule ignores the express terms of § 408.040.3, which direct – without any stated exception – that "interest *shall be allowed* on all money due upon any judgment" from the judgment's entry "until full satisfaction." The Eastern District rejected the identical argument in *Investors Title*. The Court noted that the post-judgment interest statute at issue in *Southern Real Estate*, § 2841, RSMo 1929, contained mandatory language similar to § 408.040 – yet *Southern Real Estate* "concluded that there was nothing in the language of Section 2841 that precluded its construction in harmony with the general rule that a party who unsuccessfully appeals from a judgment in his favor is not entitled to interest pending his appeal." *Invs. Title*, 18 S.W.3d at 72 (citation omitted). The Eastern District also noted that the General Assembly had reenacted the post-judgment interest statute in the face of Missouri Supreme Court decisions endorsing the *Southern Real Estate* rule. The Court invoked the presumption that "the legislature, in reenacting a statute in

substantially the same terms, has adopted the previous construction given to the statute by the court of last resort, unless a contrary intent clearly appears from the statute." *Id.* at 73 (citation omitted).

All Star seeks to avoid application of the *Southern Real Estate* rule by contending that it only "appealed" to this Court (where it was successful). All Star emphasizes that it was *HALO* which applied for transfer to the Supreme Court. While HALO may have triggered the Supreme Court's consideration of the case, All Star's argument ignores that "[t]he [Supreme Court's] grant of transfer vacates the Court of Appeals' decision; following the transfer grant, the Supreme Court decides the case 'as on original appeal,' without regard to the Court of Appeals' decision." *Stickler v. Ashcroft*, 539 S.W.3d 702, 713 n.9 (Mo. App. W.D. 2017) (citation omitted). The Supreme Court decided – and rejected – *All Star's* appeal, triggering application of the *Southern Real Estate* rule.

All Star also claims that its earlier appeal did not challenge the "adequacy of the judgment" entered by the circuit court. Instead, All Star contends that in the earlier appeal it merely argued that a statutory limitation on punitive damages could not be constitutionally applied to its claims. We are unpersuaded by this purported distinction. All Star's appeal sought to increase the $2.6 million punitive damage award contained in the circuit court's judgment to $5.5 million. As in the other cases applying the *Southern Real Estate* rule, HALO could not know how much money would be required to fully satisfy the judgment until All Star's appeal was resolved. We note that, in other cases, courts have found that a plaintiff's appeal challenged the "adequacy of the judgment" even though the appeal did not challenge the amount of a compensatory damages

13

award.  *See, e.g., Jesser*, 360 S.W.2d at 665 (plaintiffs unsuccessfully appealed an attorneys' fee award of $80,000 as inadequate); *Invs. Title*, 18 S.W.3d at 71 (plaintiff's earlier appeal "claim[ed] the trial court erred in denying prejudgment interest").  All Star's appeal, which argued that HALO owed a greater amount of punitive damages than the circuit court had awarded, was an appeal of the "adequacy of the judgment," triggering the *Southern Real Estate* rule.  All Star was not entitled to post-judgment interest during the pendency of its appeal.

Finally, All Star argues that the *Southern Real Estate* rule is inconsistent with the fact that, under modern caselaw, a defendant can stop the accrual of post-judgment interest, despite the pendency of a plaintiff's appeal, by paying the uncontested portion of the judgment.  We recognize that, in this case, HALO could have chosen to pay the compensatory damage award, and the $2.6 million in punitive damages awarded in the circuit court's judgment, and prevented the accrual of post-judgment interest on those amounts – even while All Star prosecuted its appeal arguing that the punitive damages award should have been higher.  But it has long been the case that post-judgment interest accrues only on "money *due* upon any judgment."  § 408.040.3 (emphasis added).  Even so, courts have consistently applied the *Southern Real Estate* rule on the basis that a judgment debtor could not confidently know the amount necessary to *fully satisfy* a judgment while the judgment creditor's appeal was pending.  All Star's argument, that HALO could have chosen to pay the amounts of the judgment which All Star did not challenge, may have some logical force.  But that argument provides this Court with no justification to refuse to follow the legion of cases –

including decisions of the Supreme Court – which consistently apply the *Southern Real Estate* rule in functionally identical circumstances.

Point III is denied.

## II.

In its first two Points, All-Star argues that the circuit court lacked authority to enter its Final Judgment After Remand because entry of that judgment: (1) exceeded the scope of the Supreme Court's mandate in *All Star I*; and (2) violated the "law of the case" doctrine, because issues concerning All Star's entitlement to post-judgment interest could have been raised and decided in the prior appeal.

After an appellate court renders a final decision and issues its mandate, any subsequent orders by the circuit court "must be confined to those necessary to execute the appellate court's judgment as set forth in the mandate." *Clark v. Kinsey*, 558 S.W.3d 573, 580-81 (Mo. App. E.D. 2018); *Pope v. Ray*, 298 S.W.3d 53, 57 (Mo. App. W.D. 2009). Thus, "once the appellate court enters its mandate, the trial court only has the authority to alter its judgment to the extent that such authority has been granted in the appellate court's mandate." *Schumacher v. Austin*, 400 S.W.3d 364, 369 (Mo. App. W.D. 2013) (citation omitted). Even in the absence of an intervening appeal, a circuit court loses jurisdiction to substantively amend a judgment after that judgment becomes final. *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 470-71 (Mo. 2011); *Est. of Shaw*, 256 S.W.3d 72, 76-77 (Mo. 2008); *Schumacher*, 400 S.W.3d at 369.

Because the Missouri Supreme Court affirmed the Amended Final Judgment and Order entered by the circuit court in October 2019, the circuit

court lacked authority to thereafter substantively modify that judgment. While the circuit court lacked authority to *modify* the October 2019 judgment, however, it had continuing authority to *enforce* and *implement* that judgment. Missouri caselaw has long recognized that a circuit court retains jurisdiction, after a judgment becomes final or is affirmed on appeal, to enter "special orders after final judgment" in aid of enforcement of the judgment. Such "special orders" encompass "orders in special proceedings attacking or aiding the enforcement of the judgment after it has become final in the action in which it was rendered." *Callahan v. Cardinal Glennon Children's Hosp.*, 901 S.W.2d 270, 272 (Mo. App. E.D. 1995) (quoting *Helton Constr. Co. v. High Point Shopping Ctr., Inc.*, 838 S.W.2d 87, 91 (Mo. App. S.D. 1992)); *McGathey v. Matthew K. Davis Tr.*, 457 S.W.3d 867, 873 (Mo. App. W.D. 2015); *In re Marriage of Hatch*, 851 S.W.2d 103, 106 (Mo. App. S.D. 1993).

Missouri courts have treated a wide array of post-judgment rulings as "special orders after final judgment" which are appealable under § 512.020(5) – without ever suggesting that such orders improperly amended the judgment. For example, a circuit court may enter a "special order after final judgment" to decide a motion under Rule 74.11(c) seeking a judicial declaration that the judgment has been satisfied. *See, e.g.*, *McLean v. First Horizon Home Loan Corp.*, 369 S.W.3d 794, 799 & n.3 (Mo. App. W.D. 2012); *White River Dev. Co. v. Meco Sys., Inc.*, 837 S.W.2d 327, 332 (Mo. App. S.D. 1992); *Callahan*, 901 S.W.2d at 272. Such rulings inevitably require the circuit court to resolve disputes – like the parties' dispute in this case – as to the extent of the judgment debtor's liability on the judgment.

In *Marriage of Hatch*, the Southern District held that an order determining the precise amount of a child's college expenses which a father was required to reimburse under a dissolution decree was a "special order after final judgment." The Court explained that, while *liability* for college expenses was imposed by the final judgment of dissolution, the *amount* of Father's liability was appropriately resolved by a special order:

> Here, the principal question—whether Father owed as a part of his child support obligation some part of the children's college and medical expenses—was settled by the underlying modified decree. What was not settled by the underlying judgment was the amount of Father's obligation for college and medical expenses and what criteria were to be followed in determining his obligation therefor.

*Id.* at 106. Similarly, in *Helton*, the Court held that the circuit court had jurisdiction, in post-judgment proceedings, to resolve a dispute between the parties as to whether the default rate of interest specified in a consent judgment had been triggered, or instead whether movant was entitled to an order showing satisfaction of the judgment. 838 S.W.2d at 92. For other examples illustrating the range of post-judgment rulings which have been treated as "special orders after final judgment," *see, e.g.*, *Wilson v. Wilson*, 640 S.W.3d 136, 140 (Mo. App. W.D. 2022) (ordering seeking to enforce property division in earlier dissolution decree was a "special order after final judgment"); *St. Louis Bank v. Kohn*, 517 S.W.3d 666, 672 (Mo. App. E.D. 2017) (post-judgment order appointing receiver to enforce charging order against judgment debtor's interest in various limited partnerships and limited liability companies); *Roberts v. Roberts*, 432 S.W.3d 789, 792 n.1 (Mo. App. W.D. 2014) (circuit court judgment adopting qualified domestic relations order or "QDRO" in order to implement dissolution decree's

division of retirement benefits); *McLean*, 369 S.W.3d at 802-03 (despite finality of judgment resolving class action, circuit court had inherent authority to award $462,000 in attorney's fees as a sanction for "bad faith actions taken [by defendant] subsequent to the entry of the judgment" during the processing of class members' individual claims); *Chaney v. Gray*, 898 S.W.2d 577, 583 (Mo. App. W.D. 1995) ("An after judgment order on a motion for costs is an appealable special order within the meaning of § 512.020." (citing *Mitchell v. Johnston*, 241 S.W.2d 902, 903 (Mo. 1951))).

In this case, the circuit court's Final Judgment After Remand was necessary to resolve the parties' dispute concerning the amount of post-judgment interest owing on the original judgment, and to direct the clerk concerning the disposition of the millions of dollars which HALO had deposited in the registry of the court. Moreover, the circuit court's Final Judgment After Remand addressed the effect of circumstances which only arose *after* the circuit court's judgment became final: (1) All Star's decision to appeal the adequacy of the damages awarded in the circuit court's judgment; and (2) the Supreme Court's rejection of All Star's challenge, and its affirmance of the original judgment. The circuit court's ruling constitutes an entirely appropriate "special order after final judgment," and did not substantively modify the judgment previously entered. While the circuit court may have *captioned* its ruling as if it were a new judgment, "it is immaterial that the wrong caption was used. It is the substance that is important . . . ." *Barnett v. Scholz*, 496 S.W.2d 812, 815 (Mo. 1973) (disregarding circuit court's mislabeling of its final judgment as an "interlocutory decree").

Under All Star's argument, the *Southern Real Estate* rule would never apply in tort cases – despite the fact that the rule is well-established in Missouri law.  Section 408.040.3, provides that the judgment in a tort action "shall state the applicable [post-judgment] interest rate, which shall not vary once entered." Accordingly, a judgment in a tort case *must* state the applicable post-judgment interest rate as of the date when judgment is entered – or else a judgment creditor loses their right to recover post-judgment interest at all.  *See McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 666-67 (Mo. 2014); *Peterson v. Discover Prop. & Cas. Ins. Co.*, 460 S.W.3d 393, 413 (Mo. App. W.D. 2015); *see also Dennis v. Riezman Berger, P.C.*, 529 S.W.3d 318, 320 (Mo. 2017) (distinguishing non-tort cases governed by § 408.040.2, which does not require that the judgment specify the applicable interest rate).

Thus, in *every* tort case in which post-judgment interest is available, the judgment will contain a provision like the one found in the circuit court's October 2019 judgment in this case, specifying the applicable interest rate.  Yet, according to All Star, any attempt to apply the *Southern Real Estate* rule in the face of such a judgment, based on the judgment creditor's unsuccessful appeal, would constitute a prohibited modification of the judgment, and a violation of the appellate court's mandate.  We are unaware of any authority holding that the *Southern Real Estate* rule is inapplicable in tort cases in which post-judgment interest is recoverable under § 408.040.3.

Notably, in *Weidner v. Ferrellgas, Inc.*, 662 S.W.3d 842 (Mo. App. W.D. 2023), this Court recognized that the *Southern Real Estate* rule may operate to foreclose a judgment creditor's recovery of post-judgment interest, despite the

19

fact that the judgment itself specifies a post-judgment interest rate as required by § 408.040.3. In *Weidner*, a tort judgment failed to specify a post-judgment interest rate. We concluded that § 408.040.3 "required that the trial court's judgment include an award of post-judgment interest together with the applicable interest rate." *Id*. at 849. We emphasized, however, that "[o]ur finding that the judgment was required to contain an award of post-judgment interest reflects no view on whether [the judgment debtor] owes or will owe such interest in the future." *Id*. at 849 n.7. Following this statement, we noted the potential applicability of the *Southern Real Estate* rule. *Id*. (quoting *Invs. Title*, 18 S.W.3d at 72). *Weidner* plainly contemplates that, even though a judgment specifies the applicable rate of post-judgment interest as required by § 408.040.3, the judgment creditor may nevertheless not be entitled to post-judgment interest by operation of the *Southern Real Estate* rule. *Weidner* demonstrates that there is no inconsistency between the original judgment – and the Supreme Court's affirmance of that judgment – and the circuit court's later conclusion that the *Southern Real Estate* rule prevented All Star from recovering post-judgment interest.

We also note that, in every case to which the *Southern Real Estate* rule applies, application of the rule can only be determined *after appellate proceedings have concluded*. As explained in § I, above, the *Southern Real Estate* rule operates to deny a judgment creditor post-judgment interest only if the judgment creditor's appeal is *unsuccessful*. Where the judgment creditor *succeeds* on appeal in challenging the recovery provided by a judgment, the *Southern Real Estate* rule is inapplicable. *Lindquist v. Mid-Am. Orthopaedic*

*Surgery, Inc.*, 269 S.W3d 508, 510 (Mo. App. E.D. 2008) (citing and following

*CADCO, Inc. v. Fleetwood Enterps., Inc.*, 250 S.W.3d 376, 379 (Mo. App. E.D.

2008)).  Until the Supreme Court's mandate in *All Star I* was issued, it could not

be determined whether the *Southern Real Estate* rule would even apply in this

case.  The Supreme Court's mandate could not foreclose an argument which only

arose when the mandate issued.

We reject All Star's reliance on the "law of the case" doctrine for similar

reasons.

> The doctrine of law of the case provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal.  The doctrine governs successive adjudications involving the same issues and facts.  Generally, the decision of a court is the law of the case for all points presented and decided, as well as for matters that arose prior to the first adjudication and might have been raised but were not.

*Walton v. City of Berkeley*, 223 S.W.3d 126, 128-29 (Mo. 2007) (quoting *State ex*

*rel. Alma Tel. Co. v. Pub. Serv. Comm'n*, 40 S.W.3d 381, 388 (Mo. App. W.D.

2001); citations omitted).  In this case, the applicability of the *Southern Real*

*Estate* rule was not "presented and decided" in *All Star I*.  Moreover, as explained

above, application of the *Southern Real Estate* rule did not "ar[i]se prior to the

first adjudication" such that it "might have been raised" in the earlier appeal – on

the contrary, the issue did not even arise until the prior appellate proceedings

were concluded.  HALO could not have asked this Court, or the Supreme Court,

to address the applicability of the *Southern Real Estate* rule in the prior appeal,

because the issue was not yet ripe for decision.  The "law of the case" doctrine has

no application here.

Points I and II are denied.

## III.

We conclude by addressing our appellate jurisdiction.

Prior to oral argument, this Court invited the parties to file supplemental letter briefs addressing whether the circuit court's Final Judgment After Remand should properly be viewed as a "special order after final judgment." Among other things, we asked the parties to address the following question: "If the Final Judgment After Remand is properly characterized as a special order after final judgment, does this affect the timeliness of All Star's appeal, and this Court's appellate jurisdiction?"

We conclude that All Star's appeal was timely. The circuit court entered its Final Judgment After Remand on May 27, 2022. All Star filed a timely motion to amend the judgment on June 8, 2022; that motion was deemed denied, and the judgment became final, ninety days later (September 6, 2022), by operation of Rules 78.06 and 81.05(a)(2)(A). All Star had filed its notice of appeal prematurely, on June 29, 2022; under Rule 81.05(b), that notice of appeal was deemed filed as soon as the judgment became final.

In *White River Development Co. v. Meco Systems, Inc.*, 837 S.W.2d 327 (Mo. App. S.D. 1992), the Court held that a "special order after final judgment" was subject to Rule 81.05(a), and therefore did not become final until thirty days after entry, or upon the denial of the last timely filed authorized after-trial motion. *Id.* at 333. The Court likewise applied Rule 81.05(a) to determine when a "special order after final judgment" became final in *Breihan v. Breihan*, 269 S.W.3d 38, 41 (Mo. App. E.D. 2008). Under these decisions, All Star's appeal is timely.

22

The difficulty, and the reason this Court asked the parties to brief the issue, is that in *Emerald Pointe, LLC v. Taney County Planning Commission*, 660 S.W.3d 482 (Mo. App. S.D. 2023), the Court recently stated that "if [a challenged order] qualified as a special order after final judgment, it would have become final *immediately upon entry . . . .*" *Id.* at 489 (emphasis added). *Emerald Pointe* apparently holds that Rule 81.05(a) is inapplicable to delay the finality of a special order after final judgment while authorized after-trial motions are pending. Because a notice of appeal must be filed within ten days after the judgment becomes final, *see* Rule 81.04(a), we would be required to dismiss All Star's appeal as untimely if we applied *Emerald Pointe* here.

We choose not to follow *Emerald Pointe* on this issue. *Emerald Pointe* cites no authority to support its statement that a special order after final judgment becomes immediately final upon entry. Moreover, it fails to acknowledge the contrary decisions in *White River Development* and *Breihan*. In addition, the result reached in *Emerald Pointe* is inconsistent with the principle that a special order after final judgment is issued in a *separate proceeding* from the proceeding which produced the underlying judgment. This principle has been recognized at least since *Carrow v. Carrow*, 294 S.W.2d 595 (Mo. App. 1956), which explained:

> Orders and judgments made appealable by Section 512.020 RSMo 1949, V.A.M.S. include 'any special order after final judgment in the cause'. This refers to orders in special proceedings attacking or aiding the enforcement of the judgment. Certainly a motion to quash an execution is a special proceeding attacking the enforcement of a judgment. The order overruling the motion to quash is a 'special order after final judgment in the cause'. *The principal cause—the divorce action—had been disposed of. The order was made in a proceeding independent of the proceedings in the principal cause.*

23

> The overruling of the motion was a final and complete disposition of the subject matter of the motion. The order is appealable.

*Id.* at 597 (emphasis added; citations omitted). Because a special order after final judgment terminates what is deemed to be an independent proceeding, that order should be treated as a judgment subject to Rule 81.05(a)'s finality rules—just as Rule 81.05(a) applies to *other* "independent proceedings." *See, e.g., Autumn Lakes Ass'n v. Tran*, 655 S.W.3d 442, 447-48 (Mo. App. E.D. 2022) (motion under Rule 74.06(b)(4) claiming judgment was void); *Roberts v. Roberts*, 580 S.W.3d 600, 604 (Mo. App. E.D. 2019) (motion to set aside default judgment under Rule 74.05(d)); *Matter of A.R.V.*, 561 S.W.3d 817, 823-24 (Mo. App. E.D. 2018) (same); *J&P Trust v. Cont'l Plants Corp.*, 541 S.W.2d 22, 26-27 (Mo. App. 1976) (motion for assessment of damages on injunction bond).

Rule 81.05(a) delayed the finality of the Final Judgment after Remand for thirty days, and then while All Star's motion to amend the judgment remained pending. All Star's notice of appeal filed on June 29, 2022 was accordingly timely.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.